## Wisnewski *v.* Wisnewski, Appellant.

Argued March 2, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*D. H. Jenkins,* for appellant.

*John Memolo,* for appellee.

OPINION BY CUNNINGHAM, J., April 16, 1936:

The respondent wife in this unsavory divorce proceeding has appealed from an order of the court below discharging her rule to show cause why a decree dissolving the marriage between the libellant husband and herself should not be vacated.

The parties, residents of the city of Scranton, were married June 4, 1929, and have a son, born March 4, 1930. They never had a home of their own; with the exception of a short sojourn in a boarding house in Chicago, they lived with the husband's mother in Scranton. After the birth of the child at a hospital the wife went to the residence of her mother for several weeks and then returned to the home of her mother-in-law.

The original libel, filed April 29, 1932, charged desertion by respondent on April 17, 1930. She filed an answer denying the charge and averring that libellant was the deserting party. The case came on for hearing before the court below on October 18, 1934. No extended reference need be made to the testimony of the parties and their witnesses at that hearing, except to say that it is extremely doubtful whether it would sustain a decree in favor of the libellant. That hearing ended under these circumstances. Respondent testified she had always been willing to live with libellant in any reasonably suitable home he would provide for her. At the conclusion of her cross-examination the following colloquy occurred: "The Court: Q. Would you live with him and make a home for him if he asked you to? A. I always wanted to live with him. Q. Do you still want to live with him today and go back to live with him as man and wife? A. Yes. Q. You are willing A. Yes. Mr. Epstein [counsel for libellant]. Then we don't have to go on with this divorce. The Court: We will continue this hearing for a month. We will expect the offer to be made in good faith."

There is no evidence upon the record that libellant ever made any offer in good faith to provide a home for his wife and child; he continued to live with his mother, and respondent and the child at her mother's home. Proceedings to compel libellant to support his wife and child were instituted and an order entered therein. Matters remained in this unsatisfactory state until the events of October 21, 1935. On that day libellant, in company with a lifelong friend, Steve Kusner, met the respondent in Scranton, pursuant to an arrangement made by libellant. After a visit to a cafe they went in his automobile to a secluded place near Scranton Lake where respondent committed adultery with Kusner.

Five months later, March 27, 1936, libellant petitioned for leave to amend his libel by including therein two additional charges—indignities to his person and adultery with Kusner on the date above mentioned. A copy of the petition was served upon respondent April 1, 1936, and the rule to show cause why the amendment should not be allowed was made absolute on April 15th. Several days later a hearing upon the libel, as amended, was fixed for May 15th. A copy of the order, allowing the amendment and fixing a time for hearing, was served on respondent on April 29, but was never served upon her counsel of record, D. H. Jenkins, Esq. By reason of the press of other business, the hearing was continued to May 22d. Libellant and his counsel appeared, as also did Kusner, but neither respondent nor her counsel was present. The hearing proceeded ex parte; no attempt was made to prove indignities. It is neither necessary nor desirable to detail the revolting testimony of libellant and Kusner at this hearing. It may be noted, however, that libellant was in the immediate vicinity when the adultery was committed. A week later, May 29, 1936, the decree of divorce was entered without any preliminary rule.

On July 8, 1936, respondent presented her petition and obtained a rule to show cause why the decree should not be vacated. Upon the return day of the rule, July 22, 1936, a hearing was had at which the testimony of respondent and her witness, Martha Carter, was taken. Respondent's excuse for her absence at the previous hearing was that, although served with a copy of the petition to amend and with notice of the hearing, she was waiting for further notice from her attorney. The details of the testimony at this hearing may likewise be omitted. In substance, respondent, after admitting her adultery with Kusner, asserted that libellant not only arranged to have Kusner with them on the trip but actually suggested the misconduct upon which he subsequently relied as his ground for divorce. In addition she alleged condonation by libellant. Respondent's witness testified to admissions made in her presence by libellant tending to corroborate both of respondent's counter-charges. It may also be remarked that libellant's conduct that day, even as related in his own testimony, coupled with his delay in amending his libel was not that of an "innocent and injured spouse."

In his opinion supporting the order discharging the rule to vacate, the learned president judge of the court below said: "The promiscuous conduct shown by the libellant and freely admitted by the respondent in a letter in her own handwriting is credible only on the ground that both parties are feeble-minded," and added that "it seemed for the best interest of the public to dissolve a feeble-minded marriage."

That may be a charitable way in which to regard the degeneracy disclosed by the testimony in this case, but it furnishes no legal support for a decree in divorce. The letter referred to by the court below was postmarked October 24th and, therefore, refutes any suggestion that respondent's charges against libellant were

of recent fabrication. A majority of the members of this court are of opinion that, no matter how unpleasant the task, it was the duty of the court below to make specific findings upon the issues raised by the testimony. Under the present disposition of the case, libellant has been freed from any responsibility for the maintenance of a wife, who, if her testimony is to be believed, has, in the language of the statute, "a good defense and a perpetual bar against" his charges.

The statutory provisions are clear and the decisions uniform upon the subject. By the 52d Section of "The Divorce Law" of May 2, 1929, P. L. 1237, 23 PS §52, it is provided: "Defense to Charge of Adultery.—In any action or suit for divorce for the cause of adultery, if the respondent shall allege and prove, ...... that the libellant ...... has admitted the respondent into conjugal society or embraces after he or she knew of the criminal fact, or that the said libellant (if the husband) allowed the wife's prostitution, or received hire from it, or exposed his wife to lewd company whereby she became insnared to the crime aforesaid, it shall be a good defense and a perpetual bar against the same."

The appellate courts of this state have repeatedly held that a husband who procures, encourages, or connives at his wife's prostitution cannot obtain a decree of divorce against her upon the ground of adultery: *Schwindt v. Schwindt,* 66 Pa. Superior Ct. 217; *Illg v. Illg,* 78 Pa. Superior Ct. 212; *Nacrelli v. Nacrelli,* 288 Pa. 1, 136 A. 228; *Wotherspoon v. Wotherspoon,* 108 Pa. Superior Ct. 309, 164 A. 842. It is equally well established that condonation is a complete defense: *Best v. Best,* 161 Pa. 515, 29 A. 1026; *Costello v. Costello,* 191 Pa. 379, 43 A. 240.

We also have before us a motion to quash this appeal upon the ground that it was not taken within three calendar months from the entry of the decree in divorce. It seems to be conceded that the decree, although signed

on May 29, 1936, was not entered by the prothonotary on the docket until July 2d. The rules of the court below, it is stated, provide that in contested divorce cases a "rule for decree" shall be granted at the hearing and made returnable to the next argument court, or at such other time as the judge hearing the case may direct. There is no indication upon the record that such a rule was issued in this case. The certiorari was taken out October 3, 1936, more than three months after the date of the decree, but within three months after August 19, 1936, the date of the order refusing to vacate it, and the petition to vacate was presented within a few days after the decree was entered upon the continuance docket. Under the unusual circumstances disclosed by the record, we think the appeal should be disposed of upon its merits and the motion to quash is denied.

As already indicated, the misconduct of the appellant is an admitted fact upon this record, but it does not follow that the appellee is entitled to a decree; the controverted question, requiring judicial determination, is whether he is "an injured and innocent spouse," within the meaning of our statute. That question must be determined by the court below in the first instance.

The order of August 19, 1936, is reversed; the rule to vacate the decree is reinstated and the record remitted to the end that it may be made absolute and further proceedings had not inconsistent with this opinion.